<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
ANDREW J. DEFAYETTE,            )
                                )
            Plaintiff,          )
                                )
    v.                          )       Civil Action No. 10-0363 (GEB)
                                )
                                )       **MEMORANDUM OPINION**
VERIZON COMMUNICATIONS, INC. and )
THE VERIZON CLAIMS REVIEW       )
COMMITTEE OF VERIZON SICKNESS   )
AND ACCIDENT DISABILITY PLAN    )
OF NEW YORK AND NEW ENGLAND     )
ASSOCIATES,                     )
                                )
            Defendants.         )
_____)

**<u>BROWN, Chief Judge</u>**

This matter comes before the Court upon the motion of defendants Verizon Communications, Inc. and the Verizon Claims Review Committee of Verizon Sickness and Accident Plan of New York and New England Associates (collectively "Defendants") for summary judgment (Doc. No. 11) and the cross-motion of plaintiff Andrew J. DeFayette ("Plaintiff") for summary judgment (Doc. No. 16) pursuant to Federal Rule of Civil Procedure 56. The Court has decided the matter without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons that follow, the Court will grant Defendants' motion and deny Plaintiff's cross-motion.

**I. BACKGROUND**

Verizon Communications, Inc. hired Plaintiff on January 2, 2000 as a telephone lineman. (Certification of Mary B. Rogers ("Rogers Cert.") Ex. A ¶ 10). During the course of his employment, Plaintiff sustained three distinct injuries while performing job-related tasks. (*See* Rogers Cert. Ex. G at 3-4). On November 9, 2000, Plaintiff suffered an injury to his right knee while installing a pole. (Rogers Cert. Ex. N). On May 16, 2002, Plaintiff sustained an injury to his left shoulder when he slipped and fell while moving a reel of cable. (*Id.* at 5). The final injury occurred on January 13, 2003 when Plaintiff sustained a lower back injury moving a reel of wire with a pry bar. (*Id.*).

Plaintiff thereafter received "accident" benefits pursuant to the Verizon Sickness and Accident Disability Benefit Plan for New York Associates ("the Plan"). (Rogers Cert. Ex. P). Under the Plan, accident disability is defined as follows:

> 5.1 Participation
> All Employees shall be participants in the Accident Disability Benefit Plan and qualified to receive payments under the Plan on account of physical disability to work by reason of accidental injury . . . arising out of and in the course of employment by the Employing Company.
>
> 5.5 Relationship of Injury to Employment
> Accidental injuries shall be considered as arising out of and in the course of employment only when the injury has resulted solely from an accident during and in direct connection with the performance of duties to which the Employee is assigned in the service of the Employing Company, or which he is directed to perform by proper authority, or in voluntarily protecting the Employing Company's property or interests. There must be a clear and well-established history of the cause and circumstances of injury accidentally inflicted, which must be sufficient to produce the alleged injury, and there must be satisfactory evidence that such injury renders the Employee unable to perform his duty in the service of the Employing Company.

(Rogers Cert. Ex. B at 9-10).

The Plan defines a sickness disability beneficiary in Section 4.1 as one who is "qualified to receive payments under the Plan on account of a physical disability to work by reason of sickness." (*Id.* at 7). Section 4.1 provides that a sickness "shall include an injury other than accidental injury arising out of and in the course of employment by the Employing Company." (*Id.*)

In the course of monitoring Plaintiff's disability absence, the Verizon Workers' Compensation Department arranged for Plaintiff to undergo an Independent Medical Evaluation ("IME") on October 23, 2004. (Rogers Cert. Ex. N). Dr. Edwin Mohler, an orthopedic surgeon, conducted the examination, which focused on Plaintiff's right knee, shoulder and back injuries. (*Id.*) Dr. Mohler concluded in the IME report that Plaintiff's back injury had been resolved and there was no basis for relating any back pain suffered by Plaintiff to his 2003 workplace injury. (Rogers Cert. Ex. O). With regards to Plaintiff's shoulder and right knee impairments, Dr. Mohler found Plaintiff suffered pre-existing conditions that were exacerbated by the workplace injuries, but that overall Plaintiff's total body pain was unrelated to the workplace injuries. (*Id.*) Dr. Mohler also noted that many of Plaintiff's responses appeared to be exaggerated and that Plaintiff no longer suffered any disabilities as a result of his workplace injuries. (Rogers Cert. Ex. N).

After the IME report concluded that Plaintiff's injuries were no longer related to his workplace injuries, the Verizon Workers' Compensation Department terminated Plaintiff's workers' compensation benefits effective October 28, 2004. (*See id.*). Plaintiff appealed the decision and on December 6, 2005 New York State Workers' Compensation Law Judge Jeffrey

3

Romero upheld the Verizon Workers' Compensation Department decision to terminate the benefits. (Rogers Cert. Ex. N). Plaintiff appealed and a full panel of the Workers' Compensation Board upheld Judge Romero's decision on April 24, 2006. (Rogers Cert. Ex. G).

On January 26, 2004, Metropolitan Life Insurance Company ("MetLife") became the administrator for Plaintiff's claim. (Rogers Cert. Ex. P at 6). In order to determine whether Plaintiff was still disabled within the meaning of the Plan, MetLife arranged for Plaintiff to undergo a Functional Capacity Examination ("FCE"), which occurred on November 18 and 19, 2005. (Rogers Cert. Ex. N). The examiner noted inconsistency in Plaintiff's performance of similar tasks, that Plaintiff exhibited self-limiting behaviors, and that Plaintiff's functional limitations were inconsistent with his physical impairments. (*Id.*) A MetLife Vocational Rehabilitation Specialist reviewed the results of the examination and concluded Plaintiff was capable of returning to work. (*Id.*)

Plaintiff continued to receive accident benefits until May 10, 2006 when MetLife notified Plaintiff that his workers' compensation claim had been closed effective October 28, 2004, he had exhausted his 52-weeks of short-term disability benefits, and he was eligible to apply for long-term disability benefits. (Rogers Cert. Ex. H). Plaintiff declined to apply for long-term disability benefits. (Rogers Cert. Ex. I).

On June 27, 2006, Verizon informed Plaintiff via letter that his disability benefits were mistakenly classified by MetLife as "accident" benefits instead of "sickness" benefits for the period of October 28, 2004 through November 2, 2005, and therefore the mistake would be retroactively corrected. (Rogers Cert. Ex. J). Plaintiff appealed the decision to MetLife, but

because MetLife did not have jurisdiction over the reclassification, the appeal was forwarded to the Verizon Claims Review Unit ("VCRU"). (Rogers Cert. Ex. L).

In a letter dated September 22, 2006, VCRU informed Plaintiff of its denial of Plaintiff's request for reclassification from sickness to accident disability benefits . (Rogers Cert. Ex. D). On December 1, 2006, Plaintiff requested a review of the VCRU decision. (Rogers Cert. Ex. E). On February 1, 2007, the Verizon Claims Review Committee ("VCRC") denied Plaintiff's request for reclassification of the benefits as an accident disability claim after review of Plaintiff's workplace accident reports, the results of Dr. Mohler's IME, Plaintiff's medical records from various doctors between 2000 and 2006, the report from Plaintiff's FCE and all communication between the parties related to the benefit classification. (Rogers Cert. Ex. F).

On January 22, 2010, Plaintiff brought this action, pursuant to 29 U.S.C. § 1001, et seq., the Employee Retirement Income Security Act ("ERISA"), challenging the February 1, 2007 reclassification of his benefits.

## II. DISCUSSION

### A. Legal Standard

The Court will grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P 56(a). A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Irrelevant factual disputes that do not affect the outcome of a case under governing law will not preclude summary judgment. *Id*. The moving party bears the initial burden of demonstrating the absence of a dispute of material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317,

323 (1986). Once the moving party meets this burden, the nonmoving party may defeat summary judgment by identifying specific facts over which there is a genuine dispute to be resolved at trial. *Id*.

"[W]here an ERISA-governed benefits plan grants discretionary authority to the plan administrator to determine eligibility for benefits under the plan, a court reviewing the plan administrator's actions should apply the arbitrary and capricious standard of review." *Dewitt v. Penn-Del Directory Corp.*, 106 F.3d 514, 520 (3d Cir. 1997). Under the arbitrary and capricious standard, the court will uphold the interpretation of the plan provided the interpretation is reasonable. *Id.* "An administrator's decision is arbitrary and capricious if it is without reason, unsupported by substantial evidence or erroneous as a matter of law." *Miller v. Am. Airlines, Inc.*, 632 F.3d 837 (3d. Cir. 2011) (quotations and citation omitted). "[W]here the plan gives the administrator such authority [to both evaluate claims for benefits and pay those claims], the appropriate standard of review is for abuse of discretion." *Burk v. Broadspire Servs., Inc.*, 342 Fed. App'x 732, 736-37 (3d Cir. 2009) (citing *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 112 (2008)). However, "[i]n the ERISA context, the arbitrary and capricious and abuse of discretion standards of review are essentially identical." *Miller*, 632 F.3d at 845 n.2 (citation omitted).

  **B.**  **Application**

Plaintiff, with one exception, does not contest Defendants' statement of material facts not in dispute and thus the matter is ripe for review pursuant to Rule 56. (Pl.'s Br. at 4). In seeking summary judgment on Plaintiff's claims, Defendants argue that VCRC considered all of the medical opinions in Plaintiff's record in reaching a reasonable conclusion as to the classification

of Plaintiff's disability benefits as sickness benefits within the meaning of the term under the Plan.  Plaintiff, in opposition to Defendants' motion and in support of his cross-motion for summary judgment, contends the reclassification of his disability benefits was arbitrary and capricious because the decision was contrary to the medical evidence and a misapplication of the language of the plan.

      The decision reached by the administrator in reclassifying Plaintiff's disability benefits was reasonable in light of the medical evidence in Plaintiff's record. In its communication with Plaintiff throughout the course of Plaintiff's appeals, Verizon detailed the different aspects of Plaintiff's record that were considered at each stage of the appeal. (Rogers Cert. Ex. F). In VCRU's initial review of Plaintiff's reclassification, the September 22, 2006 letter clearly outlines the findings from Plaintiff's October 25, 2004 IME, which was reviewed in connection with the appeal. (Rogers Cert. Ex. D). When Plaintiff appealed the VCRU's conclusion to the VCRC, the Committee completed a thorough review of Plaintiff's record, and took into consideration the conflicting medical opinions presented by Plaintiff's physicians, all of the communications between the parties regarding the benefit reclassification, and the original injury reports. (Rogers Cert. Ex. F). The VCRC decision noted consideration of Plaintiff's medical opinions, as well as the findings of the IME and FCE, and reasonably concluded that Plaintiff's appeal must be denied on the basis of the information contained in the reports. (*Id*.). The Court finds that the administrator completed a thorough review of Plaintiff's records in reaching the reasonable conclusion that Plaintiff did not qualify for accident benefits under the Plan.

      In opposition to Defendants' motion and in support of his cross-motion, Plaintiff first argues Verizon misread the language of the Plan when reclassifying his disability benefits as

sickness benefits. The language of the Plan states accidental injuries are "considered as arising out of and in the course of employment only when the injury has resulted solely from an accident during and in direct connection with the performance of duties to which the Employee is assigned . . . ." (Rogers Cert. Ex. B at 10). The parties do not dispute that Plaintiff sustained injuries and that those injuries occurred in the course of his employment. Plaintiff contends it is also undisputed that the injuries to his knee, shoulder and back resulted solely from his workplace accidents, but fails to present sufficient medical evidence to suggest that the injuries were solely caused by his work-place injuries. (*See* Pl.'s Br. at 12).

To be sure, a medical report by Dr. Welch, submitted by Plaintiff, concluded that Plaintiff's current problems resulted from his three recent injuries and that a prior automobile accident was too remote to be much of a contributing factor to Plaintiff's injuries. (Certification of Stephen R. Bosin ("Bosin Cert.") Ex. C). Dr. Welch had further noted that Plaintiff appears to have a family history of medical complications with the back. (*Id.*) However, after a thorough review of the medical evidence provided by Plaintiff, this Court cannot find support in the medical opinions of Plaintiff's attending physicians to conclude that Plaintiff's injuries are solely the result of his workplace injuries.

Plaintiff argues the administrator improperly disregarded medical opinions, including that of Plaintiff's attending physician, and the findings of the Social Security Administration in reclassifying Plaintiff's disability benefits to sickness disability. In support of the argument that his benefits were arbitrarily reclassified, Plaintiff cites medical reports by Dr. Stephens, Dr. Welch, Dr. Schroyer, Dr. Gavin and Dr. Bonnabesse, all of which conclude Plaintiff is totally disabled. (Bosin Cert. Ex. A; Ex. C; Ex. D; Ex. E; Exs. F-G). As noted by VCRC in the February

1, 2007 denial of Plaintiff's request for reclassification, Plaintiff's medical reports summarily conclude Plaintiff is totally disabled without providing clinical evidence to support the conclusion. (Roger's Cert. Ex. F). Provided the explanation for the denial of benefits is well-reasoned and supported by evidence, the fact that the administrator's decision conflicts with the plaintiff's treating physician does not render the denial arbitrary. *Ford v. Unum Life Ins. Co. of Am.*, 351 Fed. App'x 703, 707-08 (3d Cir. 2009) (citation omitted). Although plan administrators may not arbitrarily dismiss the opinion of a treating physician, the Supreme Court declined to require any special weight be afforded to a treating physician's opinion over a divergent medical conclusion. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). The Supreme Court further declined to impose a burden of explanation on plan administrators when the administrators rely on credible evidence that contradicts an attending physician's opinion. *Id.* This Court finds that the medical opinions submitted by Plaintiff do not make any attempt to reconcile the use of the phrase "totally disabled" with the language of the Plan. Moreover, the administrator's decision was based on substantial supporting evidence. Consequently, this divergent medical evidence submitted by Plaintiff does not render the reclassification arbitrary and capricious.

Plaintiff also contends his benefits are mistakenly classified as sickness benefits on the grounds that the administrator failed to specifically identify the type of sickness that Plaintiff suffers. Under the language of the Plan, in the context of sickness disability benefits, a "sickness" is defined as any injury other than an accidental injury arising out of and in the course of employment. (Rogers Cert. Ex. B at 7). In determining whether the interpretation of a Plan is reasonable, the courts in the Third Circuit consider:

9

>(1) whether the interpretation is consistent with the goals of the Plan; (2) whether it renders any language of the Plan meaningless or internally inconsistent; (3) whether it conflicts with the substantive or procedural requirements of the ERISA statute; (4) whether the [relevant entities have] interpreted the provision at issue consistently; and (5) whether the interpretation is contrary to the clear language of the Plan.

*Moench v. Robertson*, 62 F.3d 553, 566 (3d Cir. 1995).

In taking all of the factors into consideration, although this definition of sickness may differ from the ordinary usage of the word, it is nevertheless consistent with the Plan language and not otherwise violative of the standard. The wording of the Plan does not impose a burden on the administrator to specifically classify the type of sickness any participant may suffer, but rather the Plan essentially uses "sickness" as a catch-all term to cover all types of disabilities other than those specifically qualifying as accident disabilities. Therefore, the failure to identify a particular sickness from which Plaintiff suffers does not support Plaintiff's contention that the reclassification of his disability benefits was arbitrary and capricious.

To the extent Plaintiff alludes to a conflict of interest in that Verizon was both the plan administrator and the employer, the Court finds no abuse of discretion. "[I]f a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interests, that conflict must be weighed as a factor in determining whether there is an abuse of discretion." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) (citation omitted). A conflict of interests is just one of several factors the court must take into consideration when reaching a decision and it is not itself dispositive. *See Estate of Schwing v. Lilly Health Plan*, 562 F.3d 522, 526 (3d Cir. 2009), *cert. denied*, 131 S. Ct. 1048 (2011). Here, taking into consideration the medical evidence in Plaintiff's record and the language of the Plan, the administrator's

reclassification of Plaintiff's benefits is still a reasonable conclusion even in the instance of a conflict of interest.

Plaintiff next alleges that VCRU failed to consider the February 11, 2005 decision of the Social Security Administration finding Plaintiff disabled as a result of "multiple musculoskeletal injuries affecting the back, neck, shoulders and knees." (Bosin Cert. Ex. H). Defendants counter that Plaintiff did not include this decision with his initial letter and supporting medical documentation appealing the reclassification of his benefits. (Rogers Cert. Ex. C). It is unclear from the record whether this decision was in fact presented to VCRU and "courts generally must base their review of an administrator's decision on the materials that were before the administrator when it made the challenged decision. Materials that the parties failed to put before the administrator are not usually relevant to the inquiry of whether the administrator abused its discretion." *Howley v. Mellon Financial Corp.*, 625 F.3d 788, 793 (3d Cir. 2010). If the Social Security Administration decision was not before VCRU then this matter is distinguishable from the situation in *Stith v. Prudential Ins. Co.*, 356 F. Supp. 2d 431, 440 n.4 (D.N.J. 2005), cited by Plaintiff, which nonetheless found the lack of reference to the Social Security Administration decision to be "troubling" yet further acknowledged that "there is no legal requirement that a plan administrator . . . specifically address the decision." It is at best unclear here whether the decision was before VCRU but as it alone would not be dispositive of the matter, the Court finds the reclassification was not arbitrary or capricious in light of the substantial evidence relied upon in reaching that decision.

Similarly, Plaintiff contends that the administrator improperly relied on the decision of the New York State Workers' Compensation Board in reclassifying his benefits because at the

11

time of the reclassification decision, the Workers' Compensation Board had not reached a final decision. To support his claim that the reclassification was arbitrary and capricious, Plaintiff points to the January 6, 2011 decision of the Appellate Division of the State of New York, Third Judicial Department, which vacated the Board's decision that Plaintiff was not disabled and remanded for further fact finding. (Bosin Cert. Ex. J). These findings were not before VCRU at the time of its reclassification decision, and therefore cannot be raised for the first time here. In determining whether the administrator's reclassification decision is arbitrary and capricious, the Court can only consider whether the decision meets this standard given the evidence in the record as it stood before VCRU and VCRC.  *Howley*, 625 F.3d at 793.

### III.   CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted and Plaintiff's cross-motion for summary judgment is denied.  An appropriate Order accompanies this Memorandum Opinion.

Dated: August 30, 2011

    s/ Garrett E. Brown, Jr.
GARRETT E. BROWN, JR., U.S.D.J.